# In the United States Court of Federal Claims

No. 20-1023, 20-1068 (consolidated)
Filed: December 15, 2020
Reissued: January 15, 2021[1]

|  |  |  |
|---|---|---|
| PGLS, LLC<br>d/b/a, PIEDMONT GLOBAL<br>LANGUAGE SOLUTIONS,<br><br>              Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>              Defendant,<br><br>LEGAL INTERPRETING SERVICES,<br>Inc., d/b/a, LIS SOLUTIONS,<br><br>              Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Post-Award Bid Protest; Judgment on the Administrative Record; Tucker Act; Federal Supply Schedule; Lowest Price Technically Acceptable; Administrative Procedure Act; Arbitrary and Capricious; FAR Part 8; FAR Part 15. |

**OPINION AND ORDER**

*Alexander Brewer Ginsberg*, Pillsbury Winthrop Shaw Pittman, LLP, McLean, VA, for plaintiff.

*Ryan Christopher Bradel*, Ward & Berry P.L.L.C., Washington, DC, for consolidated-plaintiff.

*Bryan Michael Byrd*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

***SMITH*, Senior Judge**

---

[1]     An unredacted version of this opinion was issued under seal on December 15, 2020. The parties were given an opportunity to propose redactions, and those redactions are included herein.

This action is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, PGLS, LLC, doing business as Piedmont Global Language Solutions ("PGLS"), challenges the Federal Bureau of Prisons's ("BOP" or "Agency") decision to cancel Request for Quotations, No. 15BNAS20QRCA0013 (the "Solicitation") and terminate PGLS's Blanket Purchase Agreement No. 15BNAS20A00000068 (the "Contract"). PGLS Amended Complaint at 1–2, ECF No. 16 [hereinafter Pl.'s Am. Compl.]. Additionally, PGLS challenges BOP's "history of illegal sole-source awards to the large business incumbent contractor." *Id.* at 2. On August 25, 2020, Legal Interpreting Services, Inc. doing business as LIS Solutions ("LIS"), filed its Complaint in the subsequently consolidated case, alleging nearly identical challenges against BOP. Complaint at 1–2, Case No. 20-1068, ECF No. 1; *see also* Order Consolidating Cases, Case No. 20-1068, ECF No. 13.[2]

In response, defendant contends that Count I of LIS's Amended Complaint should be dismissed, as LIS lacks standing because "LIS is not the putative awardee, and the corrective action [would] provide LIS another opportunity to compete." Defendant's Motion to Dismiss, Cross-Motion for Judgment on the Administrative Record, and Opposition to Plaintiff's Motion for Judgment on the Administrative Record at 23, ECF No. 28 [hereinafter Def.'s CMJAR]. Additionally, defendant contends that Count II of plaintiffs' amended complaints should be dismissed because any challenges to the Agency's 2017, 2018, 2019, and July 2020 sole source procurements are moot, as performance under those bridge-contracts has been completed. *Id.* Finally, defendant asserts that the Agency's corrective action should be upheld because the Contracting Officer's August 11th Memorandum ("Corrective Action Memo") provides a "reasonable and coherent explanation for the agency's exercise of its discretion to take corrective action." *Id.* For the reasons set forth below, the Court grants-in-part both PGLS's Motion for Judgment on the Administrative Record and defendant's Cross-Motion for Judgment on the Administrative Record.

I.   **Background**

A.   **Current Procurement**

On or about May 7, 2020, BOP issued the Solicitation through the General Service Administration's ("GSA") eBuy portal for foreign language translation and interpretation services for incarcerated individuals. Administrative Record 59 [hereinafter AR]. BOP sought to establish a Bureau-wide single-award Blanket Purchase Agreement ("BPA") to acquire these services. AR 59. Potential offerors must have a GSA Multiple Award Schedule for the time period of the BPA, and the required languages must be identified in the offerors' Federal Supply Schedule ("FSS") 738 II, Professional Services Schedule. AR 59. As part of the procurement, the CO conducted market research, which revealed that at least sixty-five small businesses could compete and led BOP to designate this procurement as a small business set-aside. AR 29–32; AR 36. The Agency anticipated placing orders against the BPA in a similar manner to that of an Indefinite Delivery Indefinite Quantity contract. AR 59. The performance period for each BPA included a base period of twelve months with four one-year option periods. AR 60.

---

[2]   Unless otherwise noted, all citations within this decision are to the record in the lead case, *PGLS, LLC v. United States*, Case No. 20-1023.

The Solicitation's Statement of Work ("SOW") explains that the sought services support BOP's Counter Terrorism Unit, which oversees the Agency's counter-terrorism mission. AR 60. As part of this oversight, BOP requires language translation services for a "diverse inmate population, representative of a multitude of languages and dialects." AR 60. These dialects "frequently vary due to the ongoing admission and release of offenders committed to the custody of the [BOP]." AR 60. BOP required that offerors submit a current GSA FSS contract and a "price list with the quote, which verifies all required languages are included in the GSA schedule." AR 60. The Solicitation contains a list of the required languages, utilizing the Library of Congress designated ISO 639-2/RA, which includes Alaskan, Aramaic, Aztec, Benin, Indigenous, Native American, Togo, and Trinidad. AR 60–63.

From October to December of 2019, 75,153 communications required translation, 57% of which were inmate telephone calls and 42% of which were inmate correspondence, emails, and audio recordings of inmate visits. AR 63. These communications included, among others, Spanish, Arabic, Urdu, and Somali. AR 63. Additionally, the Agency responded to pre-award questions regarding the number of communications translated last year, stating that there was an "average of 18 thousand foreign language translations per month." AR 93. The Agency provided an example of language translation services needed by releasing the April 2020 communications that required translation. AR 93.

The Solicitation anticipated issuing a single award under Federal Acquisition Regulation ("FAR") 15.101-2, using the Lowest Price Technically Acceptable Source Selection process. AR 78. In making the award, the Agency would evaluate the following three factors: (1) Technical Acceptability, (2) Price, and (3) Past Performance based on Responsibility. AR 78. The Technical Acceptability factor included fourteen sub-factors rated as either "acceptable or unacceptable." AR 78–80. One of the subfactors within Technical Acceptability asks whether offerors "address[ed] all languages identified in the Pricing Schedule and the Statement of Work [] which is available through their GSA FSS contract" because "[a]ll languages identified by the [BOP] must be on the quoter's GSA FSS schedule prior to the closing date of the Request for Quote (RFQ)." AR 78.

Seven offerors responded to the Solicitation. AR 514. The Agency conducted initial evaluations and concluded that discussions were needed with certain offerors "to process deficiencies and significant weaknesses." AR 514. The Agency entered into discussions with five offerors, including LIS but not PGLS. AR 531–50. The Agency advised LIS that there was a "deficiency in [its] proposal," as LIS "did not provide documentation that clearly states all languages requested in the SOW are available." AR 540–42. The Agency instructed offerors to submit proposal revisions no later than Wednesday, June 17, 2020 at 1:00 p.m. EST. AR 531–50.

On June 30, 2020, the Agency awarded the contract to PGLS, as the lowest priced technically acceptable offeror. AR 862. At award, the Agency had not determined that PGLS had any deficiencies under the Technical Acceptability factor. *See* AR 855 ("The technical panel determined that PGLS LLC, ▇▇▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇▇▇ quotes met all the factors set forth in the evaluation criteria."); AR 882. On or about July 2, 2020, unsuccessful offerors were notified of the award to PGLS, which included the disclosure of PGLS's line-item pricing for each language. AR 970–85.

3

### B. Previous Sole-Source Awards

In 2002, the Agency competed similar requirements on a small business set-aside basis and awarded a contract to Advanced Language Systems International, Inc. ("ALSI"). Defendant's Response in Opposition to Plaintiffs' Motions and Cross-Motion for Judgment on the Administrative Record, Exhibit A, Contracting Officer Declaration ¶ 4, ECF. No. 28 [hereinafter CO Decl.]. ALSI was awarded similar contracts again in 2007 and 2012 when ALSI subsequently outgrew its eligibility to compete as a small business. *Id*. ¶ 4.

In 2017, the Agency awarded a five-year BPA to a HUBZone vendor. *Id*. ¶ 5. The Agency anticipated that the transition to the new HUBZone vendor would take three to four months. *Id*. However, there were substantial delays during this transition, including the HUBZone vendor's difficulty acquiring a physical location, which, in turn, delayed the necessary installation of a circuit used for monitoring inmate communications. *Id*. ¶ 6. In the interim, ALSI provided services on a sole-source basis through a series of Justification and Authorizations ("J&As"). *Id*. ¶ 7. Specifically, the Agency issued the following J&As: a 2017 J&A with a period of December 18, 2017 to December 17, 2018; a 2018 J&A with a period of December 18, 2018 to June 17, 2019; and a 2019 J&A with a period of July 1, 2019 to June 30, 2020. *Id*. The J&As were issued because the "Counter Terrorism Unit had an urgent and compelling need to receive the services without interruption to accomplish its national security mission of sound correctional management through timely monitoring of inmate communications." CO Decl. ¶ 7. The Agency further explained that market research showed that ALSI was the only vendor who could perform the needed services without unacceptable delays. *Id*. ¶ 8. Each J&A included an estimated value for the services needed, as well as an explanation of the unforeseen circumstances that delayed BOP's transition to the HUBZone vendor. *Id*. ¶ 9.

In 2019, "a security incident was reported regarding an alleged unauthorized use of a Personal Identify Verification card by personnel working for the HUBZone vendor." *Id*. ¶ 6. In February 2020, the Agency cancelled the HUBZone vendor's BPA. *Id*. ¶ 6–7. That same month, the Agency prepared the Solicitation at issue in the case at bar. *Id*. ¶ 10. The Agency awarded a sole-source bridge contract to the incumbent contractor, ALSI, to "permit transition to PGLS." CO Decl. ¶ 15. The Agency's sole-source award was supported by a 2020 J&A, with a period of July 1, 2020 to September 20, 2020. *Id*. The 2020 J&A contained an administrative error, indicating that the Agency was in the process of transitioning to a HUBZone vendor, instead of PGLS. *See id*. The Agency clarified its intent, stating that the transition would be from ALSI to the awardee, PGLS. *Id*.

### C. Corrective Action and Procedural History

On July 10, 2020, LIS protested the award to the General Accountability Office ("GAO"). AR 1059. On July 14, 2020, the CO issued a stop work order for PGLS's BPA, pending resolution of the GAO protest. AR 1043–44. The CO took corrective action by cancelling the Solicitation with plans to reprocure the requirement under a new solicitation. AR 1200. The corrective action was prompted by the failure of all offerors, including PGLS, to include every language identified in the SOW in their FSS contract. AR 1199. PGLS's FSS contract included a line item for "all other languages," but the CO determined that she could not

4

verify whether that line item included "all RFQ SOW languages [] listed." AR 1199. Thus, the CO concluded that corrective action was necessary and identified potential reprocurement options.³ AR 1200.

On August 5, 2020, the Agency asked the GAO to dismiss LIS's protest in light of its corrective action. AR 1072. PGLS objected to the Agency's corrective action and indicated that PGLS and LIS were in negotiations to "settle and withdraw the GAO protest." *See generally* AR 1073. On August 11, 2020, the CO summarized the Agency's rationale for taking corrective action in the Corrective Action Memo, stating the following:

> Because the solicitation at issue included languages that were not listed on any of the offerors' FSS contracts, those language that were not listed should either be competed separately under provisions that allow for full and open competition, independently of the GSA Federal Supply Schedule, or all the languages listed in the Bureau's Statement of Work should be procured under one solicitation using the procedures for full and open competition.

AR 1200. Further, the Corrective Action Memo stated that PGLS had not met the technical requirements prior to the RFQ's closing date. AR 1199. The CO concluded that, although PGLS included a line item for "all other languages," such a response failed to meet the technical requirements because the CO was "unable to verify from that general line item whether the specific languages identified by [BOP] in its [SOW] are on PGLS's FSS contract." AR 1199. As a result, the CO determined that PGLS's FSS contract failed to meet the Solicitation's requirements. AR 1199.

On August 13, 2020, the Agency renewed its request that the GAO dismiss the protest because "the proposed settlement does not resolve the error in the solicitation regarding the use of the Federal Supply Schedule." AR 1076. GAO dismissed LIS's protest as academic due to the corrective action. *See generally* AR 1082.

On August 17, 2020, PGLS filed its Complaint with this Court, asking the Court to (1) "[d]eclare that BOP's announced corrective action is arbitrary and capricious and unreasonably prejudicial to PGLS"; (2) "[d]eclare that the sole source awards to ALSI are improper and violate the competition requirements of [the Competition in Contracting Act ("CICA")] and FAR Part 8"; (3) "[e]njoin BOP from issuing further sole source awards to ALSI for the services in question"; (4) "[e]njoin BOP from terminating PGLS' Contract"; and (5) "[g]rant PGLS such other and further relief as the Court may deem just and proper." PGLS's Complaint at 13, ECF No. 1. On August 8, 2020, PGLS filed an Amended Complaint, requesting similar relief. *See* Pl.'s Am. Compl. at 29. On September 1, 2020, the Court issued an order consolidating Case

---

³ As part of the CO's reprocurement decision, she notes that the disclosure of PGLS's prices "may put PGLS at a competitive disadvantage." Defendant's Response in Opposition to Plaintiffs' Motions and Cross-Motion for Judgment on the Administrative Record, Exhibit A, Contracting Officer Declaration ¶ 18, ECF. No. 28. As a result, the Agency "decided to conduct the reprocurement for the services independently of the FSS under one solicitation using the procedures for full and open competition." *Id*.

5

No. 20-1023 and Case No. 20-1068, as the two cases contained "factual and legal commonalities." Order Consolidating Cases at 1, ECF No. 14. On September 11, 2020, LIS filed its Amended Complaint, requesting identical relief as PGLS. *Compare* LIS Amended Complaint at 26–27, ECF No. 19 [hereinafter Consol.-Pl.'s Am. Compl.], *with* Pl.'s Am. Compl. at 29.

On September 4, 2020, defendant filed the Administrative Record. *See generally* AR, ECF No. 15. On September 25, 2020, plaintiffs filed their Motions for Judgment on the Administrative Record. *See generally* Plaintiff PGLS's Motion for Judgment on the Administrative Record and Supporting Memorandum of Points and Authorities, ECF No. 26 [hereinafter Pl.'s MJAR]; *see also* Plaintiff LIS's Motion for Judgment on the Administrative Record and Supporting Memorandum of Points and Authorities, ECF No. 27 [hereinafter Consol.-Pl.'s MJAR]. On October 16, 2020, defendant filed its Response and Cross-Motion. *See generally* Def.'s CMJAR, ECF No. 28. On October 23, 2020, plaintiffs filed their respective Responses and Replies. *See generally* Plaintiff LIS's Response and Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 29 [hereinafter Consol.-Pl.'s Resp.]; *see also* Plaintiff PGLS, LLC's Response and Reply in Support of its Motion for Judgment on the Administrative Record, ECF No. 30 [hereinafter Pl.'s Resp.]. That same day, plaintiffs filed a motion to strike portions of the contracting officer's declaration and any associated references within defendant's cross-motion. *See generally* Plaintiffs' Motion to Strike or Exclude Portions of the Declaration of Contracting Officer Brooke Garcia and related Portions of Defendant's Cross-Motion for Judgment on the Administrative Record, ECF No. 31 [hereinafter Mot. to Strike]. On October 30, 2020, defendant filed its response to plaintiffs' Motion to Strike and Reply in support of its Motion to Dismiss and Cross-Motion. *See generally* Defendant's Response to Plaintiffs' Motion to Strike and Reply in support of its Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record, ECF No. 32 [hereinafter Def.'s Reply].

On November 5, 2020, the Court held oral argument. On November 13, 2020, the Court held a status conference to discuss the possibility of settlement. *See generally* Status Conference Order, ECF No. 33. As a result of that status conference, the parties proposed language for a permanent injunction. *See generally* Plaintiffs' Proposed Order Granting Permanent Injunctive Relief, ECF No. 36; *see also* Notice of Objection to Plaintiffs' Proposed Injunction, ECF No. 37. On November 13, 2020, the Court entered a permanent injunction and indicated that it would issue a full Opinion and Order to follow. Permanent Injunction, ECF No. 38. This is that Opinion. The parties' cross-motions are fully briefed and ripe for review.

## II.     Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). This authority exists "without regard to whether suit is instituted before or after the contract is awarded." *Id*. Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages."

*United States v. Testan*, 424 U.S. 392, 398 (1976).  Rather, to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires that the bid protest be brought by an "interested party."  A protestor is an "interested party" if it is an actual or prospective bidder that possesses the requisite direct economic interest.  *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).  "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract."  *Rex Serv. Corp.*, 448 F.3d at 1308; *see Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *see also Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996).

Pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record to request that the Court assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review.  *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006)).  On such a motion, the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record.  R. Ct. Fed. Cl. 52.1; *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005).  The Court will then determine whether a party has met its burden of proof based on the evidence in the record.  *Bannum*, 404 F.3d at 1355.

This Court reviews bid protests in accordance with the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2018).  *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Agency procurement actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706 (2018) (incorporated in 28 U.S.C. § 1491(b)(4)).  That highly deferential standard exists in part because agencies and their "[c]ontracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.'"  *See Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting *Impresa*, 238 F.3d at 1332); *see also Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

To succeed on a claim that an agency's decision violates a statute, regulation, or procedure, the protestor must show that the alleged violation was "clear and prejudicial." *Impresa*, 238 F.3d at 1333.  In reviewing a protestor's claims, the Court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974); *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (Where the Court "finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an

original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."). Accordingly, the Court will "interfere with the government procurement process 'only in extremely limited circumstances.'" *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983)).

### III. Discussion

In their Motions for Judgment on the Administrative Record, both PGLS and LIS focus on two identical and specific questions. *See* Pl.'s MJAR at 1; Consol.-Pl.'s MJAR at 1. The first, which is addressed below, is whether "BOP's proposed corrective action in this procurement is arbitrary and capricious?" *Id*. The second, which is addressed under section B, is whether "BOP violated [CICA] and various provisions of the [FAR] in connection with its three-year history of sole-source awards to the large business incumbent contractor?" *Id*. Additionally, plaintiffs request permanent injunctive relief, which is addressed under section C. *Id*. For the reasons that follow, the Court finds BOP's corrective action, which resulted in the cancellation of PGLS's award and reprocurement of the Solicitation, arbitrary and capricious.

#### A.     The Agency's Corrective Action

In their Motions for Judgment on the Administrative Record, plaintiffs allege that BOP's corrective action is arbitrary and capricious, which is explicitly and implicitly evidenced by information within the Corrective Action Memo. *See* Pl.'s MJAR at 28–31; *see also* Consol.-Pl.'s MJAR at 29–30. For example, PGLS argues that the Memo "provides no factual support for the Contracting Officer's conclusion that the 'languages that were not listed' should be competed separately or, conversely, that 'all of the languages listed' should be competed again under a new procurement." Pl.'s MJAR at 28. PGLS further asserts that many of the languages within the Solicitation's SOW "cannot reasonably be competed" because "they do not exist"; as a result, BOP "fail[ed] to consider a critical aspect of the problem." *Id*.

PGLS further alleges that BOP "already knew" or "clearly should have known" that offerors' FSS contracts did not contain all of the languages within the SOW because BOP had discussions with certain—but not all—offerors regarding this deficiency and allowed these offerors to submit a revised quote. *Id*. at 29. Finally, PGLS argues that BOP "had no reasonable basis to reject its 'All Other Languages' catch-all category that would cover extremely uncommon languages." *Id*. LIS reiterates a number of the arguments raised by PGLS. *See* Consol.-Pl.'s MJAR at 29–30.

In response, defendant argues that the Agency provided a reasonable and coherent explanation for the corrective action in the Corrective Action Memo, "which aims to remedy the agency's faulty determination that each quoter had satisfied the RFQ's FSS language listing requirement and reprocure the services in a manner consistent with CICA's competition mandate." Def.'s CMJAR at 35. Defendant further alleges that the Administrative Record demonstrates that vendors exist who can provide the languages listed within the SOW because seven quoters "indicated in the narrative portion of the quotes that their linguists could provide the services for the languages identified in the RFQ's SOW." *Id*. at 37 (internal citations omitted).

In response to plaintiffs' discussion-related arguments, defendant contends that discussions were confined to the "technical adequacy of the narrative portions of their quotes, not the FSS contracts that were included with their quotes." *Id*. at 43 (citing CO Decl. at ¶ 12). Finally, defendant argues that PGLS's catch-all line-item for "All other languages" does not "verify [whether] PGLS's FSS contract lists all of the RFQ SOW languages because PGLS did not quote that line item's price for each language that is not listed on its FSS contract." *Id*. at 39 (citing AR 387; AR 379–82). In other words, defendant argues that the CO was not able to verify PGLS's pricing because the prices listed in its Pricing Schedule for the missing RFQ SOW languages differ from the prices associated with the "All Other Languages" line item. *See id*.

In determining whether an agency's corrective action is arbitrary and capricious, the Court considers "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Mori Assocs. v. United States*, 102 Fed. Cl. 503, 518 (2011) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). The corrective action must be "reasonable under the circumstances and appropriate to remedy the impropriety." *Prof'l Serv. Indus., Inc. v. United States*, 129 Fed. Cl. 190, 203 (quoting *Amazon Web Servs., Inc., v. United States*, 113 Fed. Cl. 102, 115 (2013)). This standard of review is "narrow" and does not allow the Court to substitute its judgment for that of the agency. *Mori Assocs*. 102 Fed. Cl. at 518. "The Court will instead look to see if an agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Id*. (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The relevant test is whether the agency "provided a coherent and reasonable explanation for its exercise of discretion." *Id*. at 519 (quoting *Impresa*, 238 F.3d at 1331). In applying that test, the Court should look to whether the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency,' or made a decision that was 'so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Id*. (quoting *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)).

The Court will not "rubber-stamp an agency's unexplained decision," as doing so "would be an abdication of the Court's review function (limited as it may be)." *Prof'l Serv. Indus.*, 129 Fed. Cl. at 206. Although an agency's decision is afforded a "presumption of regularity," this will not shield an agency from a court's in-depth review. *See Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 358 (quoting *Overton Park*, 401 U.S. at 415). Indeed, the arbitrary and capricious standard is highly deferential, but it does not require the court to accept "assertions on a critical point that are not otherwise tied to the administrative record and that are at least in tension with, if not contradicted by, various aspects of that record." *Id*. (quoting *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 742 (2000)).

The record supports finding that BOP's corrective action, which resulted in the cancellation of PGLS's award and reprocurement of the Solicitation, is arbitrary and capricious. Defendant argues that the Corrective Action Memo "coherently and reasonably summarizes the need for corrective action," with the purpose of providing a "remedy [for] the agency's faulty determination that each quoter had satisfied the RFQ's FSS language listing requirement [thus] reprocur[ing] the services in a manner consistent with CICA's competition mandate." Def.'s CMJAR at 35. However, the Corrective Action Memo does not provide information relevant to

9

some issues at present, such as whether the requirements mandate strict compliance with Solicitation terms or whether corrective action would in fact reasonably cure the Solicitation's deficiencies.

PGLS argues that many of the languages within the Solicitation's SOW "cannot reasonably be competed" because "they do not exist," and, as a result, BOP "fails to consider a critical aspect of the problem" by cancelling PGLS's award and reprocuring all of the languages listed in the SOW. *Id*. The Court agrees with plaintiff. The Corrective Action Memo does not comment on the requirement for translation services for languages that technically do not exist; certain listed "languages" are countries—not languages or dialects—or they are archaic and uncommon. *See* AR 1199–200. Moreover, no offerors fulfilled the technical requirement of providing all languages within the SOW, despite defendant's insistence that at least "seven quoters" indicated they had the ability to provide those languages within the narrative portion of their offer. Def.'s CMJAR at 37 (internal citations omitted). Even assuming at least seven offerors can provide translation services for all of the languages listed in the SOW, the Agency cannot confirm whether these offerors proposed the correct language translation services within each country that speaks more than one language. In short, the record shows that the Agency failed to consider an important aspect of the problem.

Additionally, the Agency's corrective action is at odds with, if not contradicted by, various parts of the record related to evaluations and discussions. On June 9, 2020, the Agency conducted a Technical Management Evaluation, which included a review of Technical Subfactor 1 as follows:

> [a]ll languages identified in the pricing schedule and Attachment 1, Statement of Work (SOW), are available through the quoters General Service Administration's (GSA) Federal Supply Schedule (FSS) contract. **All languages identified in this RFQ must be on the vendors GSA FSS prior to the quotation due**. Furthermore, vendors shall provide a current copy of their respective GSA FSS contract verifying all of the languages identified by the Bureau of Prisons are available under GSA FSS contract.

*Id*. (emphasis added). The Technical Evaluation determined that PGLS, ▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮ "met and/or exceeded most of the government's requirements and [do] not require discussions to address any deficiencies or significant weaknesses." AR 514. Thus, the Technical Management Evaluation makes it clear that the Agency did not find such a deficiency in PGLS's offer or with the "All other languages" catch-all in PGLS's FSS contract. *See* AR 381.

Importantly, the record does not support finding that any error occurred in the Agency's assessment of PGLS's technical acceptability. *See* AR 514. The Agency specifically stated that it was conducting discussions with offerors that had deficiencies in specific subfactors, including Subfactor 1. *See* AR 514. It seems to the Court that the Agency's failure to hold similar discussions with PGLS amounts to a functional acceptance of the "All other languages" line item in PGLS's FSS contract. Regardless, defendant asserts that the CO cannot verify whether PGLS's catch-all line item covers all the languages listed within the Pricing Schedule because the prices differ. Def.'s CMJAR at 39 (citing AR 387; AR 379–82). However, the Court

recognized this argument to be a *post hoc* rationalization, particularly considering that the Agency did not identify this concern contemporaneously with its corrective action. In reality, the record supports a determination that the Agency considered PGLS's offer and found it technically acceptable for the specific deficiency which it now purports to fix through corrective action. *See* AR at 1199.

The Court will not substitute its judgment for that of the Agency, but it does require a "coherent and reasonable explanation for the Agency's exercise of discretion." *Mori Assocs.*, 102 Fed. Cl. at 518–19 (quoting *Impresa*, 238 F.3d at 1331). For the reasons discussed above, the Court cannot find a reasonable or satisfactory explanation for the Agency's decision to terminate PGLS's award and reprocure the services contained therein. The government's position finds no support within the Administrative Record. Therefore, the Court finds the Agency's corrective action arbitrary and capricious and contrary to the standards set forth in the APA, 5 U.S.C. § 706 (2018).

### B. Sole-Source History

In addition to plaintiffs' general arguments relating to the corrective action, plaintiffs challenge BOP's history of sole-source awards to incumbent, ALSI. Pl.'s Am. Compl. at 2; Consol.-Pl.'s Am. Compl. at 2. In plaintiffs' Motions for Judgment on the Administrative Record, they argue that the Agency "failed to compete this small business set aside procurement for years." Pl.'s MJAR at 34; Consol.-Pl.'s MJAR at 31. Plaintiffs allege the following statutory and regulatory violations: (1) the Agency's failure to synopsize and publicize in accordance with the FAR, and (2) gross inaccuracies within J&A documents, including Federal Procurement Data System ("FPDS") reports for the 2017 J&A, 2018 J&A, 2019 J&A, and 2020 J&A. Pl.'s MJAR at 34–39; Consol.-Pl.'s MJAR at 31–37. As a result, plaintiffs ask the Court to "enjoin BOP from issuing further sole-source awards to ALSI." Pl.'s Am. Compl. at 29; Consol.-Pl.'s Am. Compl. at 27. In response, defendant argues that plaintiffs' challenges to the government's prior sole-source awards to ALSI should be dismissed because the challenges are "moot or for which plaintiffs lack standing." Def.'s CMJAR at 31. PGLS replies by clarifying that it is the "continuing and future sole-sourcing that PGLS asks the Court to enjoin." Pl.'s Resp. at 11.

Upon careful review of the parties' arguments, the Court need not delve into defendant's mootness or standing arguments as plaintiffs' concerns regarding continuing and future sole-source awards to ALSI are addressed through the Court's Permanent Injunction. *See generally* Permanent Injunction, ECF No. 38. Specifically, the Court ordered that

> [a]s of the earlier of January 15, 2021 or the date on which the transition under PGLS'[s] BPA is complete, BOP is enjoined from issuing new orders to Advanced Language Systems International, Inc. (ALSI) under BPA No. 15BNAS21A00000075 (which BOP awarded to ALSI on September 29, 2020) for the language services covered by PGLS's BPA.

*Id.* at 1. At present, the Court lacks the jurisdiction over elapsed contracts that were awarded under a separate and distinct procurement vehicle. Additionally, the Court will not enjoin BOP from future, hypothetical procurement awards that are not connected to the contract presently at issue. This would be contrary to the traditional rules of equity jurisdiction.

### C.     Injunctive Relief

In addition to its merit-based arguments, plaintiffs assert that they are entitled to permanent injunctive relief.  *See* Pl.'s MJAR at 39–40; *see also* Consol.-Pl.'s MJAR at 38–39. The Court will grant permanent injunctive relief if the plaintiff has demonstrated success on the merits of the case, and after careful consideration of the following three factors: (1) "whether the plaintiff will suffer irreparable harm if this [C]ourt withholds injunctive relief," (2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief," and (3) "whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004) (internal citations omitted).

In determining whether a plaintiff has suffered irreparable injury, the relevant inquiry is "whether plaintiff has an adequate remedy in the absence of injunction." *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447–48 (1993).  The first factor heavily favors injunctive relief because of the irreparable harm to PGLS from the Agency's disclosure of PGLS's line-item pricing.  *See* Pl.'s MJAR at 39.  The Court does not find the Agency's reprocurement plan, to recompete the requirement "under one solicitation using [] procedures for full and open competition," to be sufficient to mitigate the harm from the government's improper disclosure of PGLS's line-item prices.  *See* Def.'s CMJAR at 46 (citing CO Decl. at ¶ 18).  Without this Court's injunction, PGLS may have no remedy because defendant has not suggested, and this Court has not heard, an alternative to the Agency's plan to "reprocure independently of the FSS." *See* AR 1200.

In balancing the hardships to the parties, the Court must "weigh the irreparable harm plaintiff would suffer absent an injunction against the harm such an injunction would inflict on defendant." *Rush Constr., Inc. v. United States*, 117 Fed. Cl. 85, 103 (2014).  The Court considered the harm to the parties absent an injunction and determined that PGLS will suffer greater harm than BOP absent an injunction.  Specifically, BOP would suffer little to no harm by issuing orders to ALSI under its BPA, 15BNAS21A00000075, until January 15, 2021 when PGLS's transition to the BPA is complete.  On the contrary, PGLS would suffer great harm should the injunction not be granted, as it would be forced to recompete for the requirement after disclosure of its entire line-item pricing and as it continues to pay for management personnel and leasing space.  *See* Def.'s MJAR at 39.

When analyzing public interest, the Court seeks to "preserv[e] the integrity of the procurement process by requiring the government to follow its procurement regulations." *Superior Optical Labs, Inc. v. United States*, 2020 U.S. Claims LEXIS 2153 at *36 (Fed. Cl. Oct. 21, 2020) (quoting *Hosp. Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005)). The Agency's corrective action here was arbitrary and capricious and in derogation with the standards set forth in the APA, 5 U.S.C. § 706 (2018).  After considering all of the previously-iterated factors, the Court determined injunctive relief was the appropriate remedy. On November 13, 2020, the Court entered a permanent injunction.  *See generally* Permanent Injunction, ECF No. 38.

### D. Motion to Strike and Briefing of Consolidated-Plaintiff

On October 16, 2020, defendant filed its Cross-Motion, along with a declaration from the Contracting Officer, Brooke Garcia. *See generally* CO Decl. In response, on October 23, 2020, plaintiffs filed a motion to strike that declaration and the related portions of defendant's Cross Motion. *See generally* Mot. to Strike. In its Motion, plaintiffs move to strike or exclude paragraphs 5–10, 15, 17, 18 (final three sentences), 21, and 22 of the Contracting Officer's Declaration and the attached ledger, arguing that those portions of the declaration are not properly before the Court. *See id*. at 1–2, 15. On October 30, 2020, defendant responded, arguing that the material plaintiffs challenge "simply summarize[s] information that is already in the record" and is either "necessary for effective judicial review" or is relevant to the Court's injunctive relief analysis. *See* Def.'s Reply at 2. Upon careful review of the parties' arguments, the Court determines that the challenged material is either in the record, as defendant argues, or provides information necessary for effective judicial review. As such, plaintiffs' Motion to Strike is hereby **DENIED**.

The Court notes that LIS, while referred to as a consolidated-plaintiff, is more accurately participating in this matter as an *amicus curiae*. LIS's participation as an *amicus curiae*, does not require it to file or refile any pleadings. The Court, however, may use information provided by an *amicus* to make informed decisions, such as for injunctive relief. *See Axiom Res. Mgmt. v. United States*, 78 Fed. Cl. 576, 602 (2007) (citing *Kern River Co. v. United States*, 257 U.S. 147, 155 (1921)); s*ee also* 4 AM. JUR 2d *Amicus Curiae* § 1 ("The role of an amicus curiae is to assist the court in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision. Amicus curiae presentations assist the court by broadening its perspective on the issues raised by the parties; among other services, they facilitate informed judicial consideration of a wide variety of information and points of view that may bear on important legal questions. The appearance of amicus curiae is permitted for the purpose of assisting the court on matters of law about which the court is doubtful, rather than presenting a partisan view of the facts.").

### IV. Conclusion

For the reasons set forth above, plaintiff PGLS's MOTION for Judgment on the Administrative Record is **GRANTED-IN-PART** as it pertains to COUNT I and **DENIED-IN-PART** as it pertains to Count II. Defendant's CROSS-MOTION for Judgment on the Administrative Record and Motion to Dismiss is **GRANTED-IN-PART** as it pertains to COUNT II and **DENID-IN-PART** as it pertains to Count I. For the reasons set forth above, consolidated-plaintiff LIS's MOTION for Judgment on the Administrative Record is **MOOT**. The Clerk is directed to enter judgment in favor of plaintiff as it pertains to COUNT I and for defendant as it pertains to COUNT II, consistent with this Opinion. Costs to Plaintiff.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge